*161 Opinion op the Court,
ey -Ch, J. Boyle.
During the September term, 1-823, of the circuit court for Montgomery county, the office of clerk of that court became vacant, by the resignation of the former incumbent, and Harrison, the defendant in error, ing produced a certificate from the judges of the court of appeals, of his qualification, was appointed to the fice by an order of the court "pro tempore, to wit, uníil *162 the second day of the next March term.” He thereupon took the oaths of office and executed bond, as required by law, and continued to hold the office and discharge its duties, until the second day of the next March term, when the court made an order appointing Stonestreet to the office during good behaviour, he having produced to the court a certificate from the judges of the court of appeals, of his qualification, and Stone-street thereupon took the oaths of office and executed bond as required by law, and has continued since to discharge the duties of the office and to receive the fees therefor. To recover these fees, Harrison, claiming a right to the office, brought this suit against Stonestreet; and on an agreed case, comprising, among others, the foregoing facts, the court below gave judgment for Harrison, to reverse which, Stonestreet prosecutes this writ of error. ’
An appointment of another, on the 2d day of the next term, is illegal.
As each, party claims the clerkship in virtue of his appointment, the main question is, which of the two is entitled to the office.
On the part of Harrison, it is contended that a court has no power, under the constitution, to appoint a person clerk pro tempore, who produces a certificate of his qualification: that he, having produced to the court, when he was appointed, the requisite certificate of his qualification, his appointment conferred upon him a right to hold the office during good behaviour, and that the limitation annexed to the appointment is unconstitutional and void. On the contrary, it is urged on the part of Stonestreet, that a court may, at its discretion, constitutionally make an appointment pro tempore, of one who produces a certificate of his qualification, as well as of one who has no such certificate; and that the limitation annexed to the appointment of Harrison, is, notwithstanding the production of his certificate, constitutional and valid.
In support of these conflicting positions, both parties appeal to the 10th section of the 4th article of the constitution, and upon the proper construction of that, the controversy principally depends. That section declares, that “each court shall appoint its. own clerk, who shall hold his office during good behaviour; but no person shall be appointed clerk, only, pro tempore, who shall not produce to the court appointing him, a certificate from a majority of the judges of the court of appeals» *163 that he had been examined by their clerk in their presence, and under their direction, and that they judge him to be well qualified to execute the office of clerk, to any court of the same dignity with that for which he offers himself.” The section then provides, that clerks shall be removeable for breach of good behaviour, by the court of appeals only, and requires two thirds of the members present, to concur in the sentence.
Had this section stopped at the end of the first clause, and the constitution had contained no other provision upon the subject, there would have been no difficulty in the case. The first member of that clause, gives to each court an unlimited power to appoint its own clerk; but it confers no further power. And the second member of the clause, fixes the tenure of office, by declaring, that the person who is appointed, “shall hold his office during good behaviour.” Upon the supposition just mentioned, therefore, it is evident, that when the court had exercised the function of appointing a clerk, its power would have ceased, and the person appointed would have been in office under the constitution, during good behaviour; and, consequently, the annexation to the appointment, of any declaration by the court, in regard to the tenure of office,, could have had no effect; for a declaration that the office should be held during good behaviour, that being the tenure prescribed by the constitution itself, in all cases, would have been superfluous and inoperative, and a declaration that the office should be held in fee simple, or for years, or at will, or pro tempore, would, as the tenure so declared,is inconsistent with that prescribed by the constitution, have been utterly void. We might here bring in aid of this construction of the first clause of the section under consideration, the English cases cited in the argument, decided under the statute of William and Mary, which contains a similar provision with respect to the appointment of a clerk of the peace by the cusios rotulorum. But it is unnecessary to do so; the intrinsic propriety of the construction being, we conceive, too obvious to require to be illustrated or fortified by the citation of analogous cases.
Assuming such, then, to be the corréct construction of the fii’st clause of the section, if it stood alone, the question occurs, what is the effect produced upon it by the subsequent part of the section? “But no person shall be *164 appointed clerk, only pro tempore, who shall not pro-j.0 t[je cour(; appointing him, a certificate,” &c.
This, it may be' conceded, is not’ as happily worded as the preceding part of the section, and is not, of course, as explicit as it might have been; but its object cannot, we conceive, be mistaken or misunderstood. The first clause of the section, had given to the courts an unlimited power of appointment, and had fixed the tenure of office during good behaviour, in all cases, without regard to the qualification of the person appointed. The object of this part of the section, could not, therefore, have been to enlarge either the power of appointment, or the tenure of office. The langnage in which it is couched, as well as the reason of the thing, repels this idea; for this part of the section begins with the conjunction “but,” an appropriate term to indicate the intention of those who use it, to limit or restrain the sense or effect of something which had before been said, and throughout the whole of it, a negative phraseology is employed; consequently, it could have been inserted only with a view of limiting or restraining the preceding part of the section, and not with a view of enlarging it; and its object must have been, to impose a restriction, either upon the power of appointment, or upon the tenure of office, or upon both. B.ut it is not pretended, that there is any restriction imposed by it upon the power of appointment. That is contended on the part of Stonestreet and admitted on the part of Harrison, to be still unlimited. It follows, that it is upon the tenure of office only, that the restriction is imposed. And what is the restriction? Why, simply, that no person shall hold the office of clerk, only pro tempore, who shall not produce to the court appointing him, the requisite certificate of his qualification, leaving those who shall produce such certificate, to hold the office, as it was provided by the preceding part of the section, they should do, during good behaviour. It is true, that the word '“appointed,” is used in this part of the section, instead of the word “hold,” which was employed in the preceding part of it, and as the former is not an appropriate term in reference to the tenure of office, some ambiguity of meaning is thus produced in this part of the section; but as it is evidently restrictive in its import, and as it is admitted that the power of appointment is not restrained by it, the conclusion is irresista» *165 Me, that it must operate to restrain the tenure of office only. It was indeed contended by the counsel for Stonestreet, and it was necessary for- his purpose that he should so contend, that this part of the section not only left the power of appointment unlimited, but that it operated as a grant to the court, of the power to make pro tempore appointments in all cases, as well of those who produced certificates of their qualifications, as of those who had no certificate. But upon what principle it could have such an effect, we were not told in the argument, and we confess, we are unable to imagine.
It would be absurd, to suppose that the framers of the constitution had, in the first clause of the section, fixed the tenure of office during good behaviour, in all cases, and that he had, in the very next clause, granted to the courts the power of making appointments pro tempore, in all cases. Such inconsistency cannot and ought not to be attributed to them, without the clearest expression of their intention to that effect; and there is, in this part of the section, no such expression of their intention. No words appropriate to the grant of the power contended for, are used. On the contrary, the language employed is calculated to repel the idea, that such power was intended to be granted; for the grant of the power could only have been made by an affirmative provision, and this part of the section is couched, as we before observed, in negative phraseology. But at most, it could only imply a grant of power to make pro tempore appointments of those who should not produce the requisite certificates of their qualification; for they only, and not those who should produce certificates of their qualification, are mentioned in this part of the section, and the expression of the one class, is the exclusion bf the other, according to the maxim ex-pressio unius est exclusio alterius. We cannot, however, admit that this part of the section implies a grant of power to the court to fix the tenure of office of those even who have no certificates of their qualification. On the contrary, we apprehend, they, when appointed, are in office pro tempore under the constitution, and not by virtue of any declaration to that effect by the courts who make the appointments; for if it were otherwise, that, whether they would, when appointed, be in pro tempore or not, would depend upon the declaration annexed by the court to their appointment; bqt it is cie&r, *166 that although the court should annex none, or should annex any other limitation to their appointment than that which the constitution has declared, yet they would be in pro tempore only.
Upon the whole, therefore, the majority of the court are of opinion, (Judge Mills dissenting,) that Harrison was in office under the constitution, during good behaviour, and that the limitation annexed to his appointment, is unconstitutional and void.
Judgment affirmed with costs.